## BROWN v. MOST WORSHIPFUL GRAND LODGE, FREE AND ACCEPTED MASONS OF THE STATE OF LOUISIANA.*

### No. 18493.

Court of Appeal of Louisiana. Orleans.

Nov. 16, 1936.

*Writ of certiorari refused Jan. 4, 1937.

Chas. Mundy; of New Orleans, for appellant.

Harry McEnerny, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit against the Most Worshipful Grand Lodge, Free and Accepted Masons of the State of Louisiana, brought by Nancy Brown, the widow of William Beasley, a deceased member of Gilbert Lodge No. 6, a subordinate lodge of defendant, in which the sum of $300 is claimed as a beneficial interest in a certain "charity fund" maintained by the defendant.

The defendant, in its answer, denied that the plaintiff was entitled to the benefit claimed upon the ground that her deceased husband, William Beasley, who had originally named her as beneficiary had, prior to his death, substituted Gilbert Lodge No. 6. In the alternative the defendant averred that if any sum be due the plaintiff it is $200 and not $300.

In the trial court there was judgment nonsuiting the plaintiff. Both plaintiff and defendant have appealed.

The validity of the change in beneficiary is the first question to be determined.

The by-laws of the defendant adopted at the "68th Annual Communication and Special Grand Session" of the order provides in part as follows:

"In order that we may effectively render aid to the widows, orphans and relatives of a worthy deceased brother of the jurisdiction of the M. W. Eureka Grand Lodge, F. & A. M. of Louisiana * * * be it enacted and ordained that

a Charity Fund be established and the same is hereby established. * * *

"Be it further enacted and ordained that this Charity Fund is established solely for the purpose of giving relief as uniformly as possible as hereinafter directed and shall not be construed or interpreted as being an insurance or endowment department or fund. Donations are made by members under this agreement.

"Article 1.

"Section 1. That a Charity Fund be and the same is hereby established, and upon the death of a Master Mason, in good and regular standing, satisfactory evidence of the death submitted, may donate the sum of one dollar ($1.00) to three hundred dollars ($300.00), charity money to the widow, orphans, or any relative he may suggest, and when suggestions are made, said suggestions must be written upon blanks provided for that purpose by the Grand Secretary, for which there is no charge to be made, provided, that relationship exists by blood or ties of affection, or the Mother Lodge. The purpose of said suggestions is to identify the relatives of member to the end that the Charity Bureau may be guided intelligently in the distribution of its funds. * * *

"Article 2.

"Section 1. Every Master Mason shall donate to the Charity Fund a charitable donation of six dollars ($6.00) per year, due to the indigent circumstances existing among most Master Masons among our group that the said donation may be payable in monthly payments of fifty cents through his lodge, the said Charity donation must be donated on or before the 10th of each month, in order that the Charity Bureau may be able to make donations monthly. * * *

"Article 3.

"Section 5. This Grand Lodge reserves the right to say who shall or shall not be participants to share in their donations, therefore, there can be no contestants upon the death of a brother in good and regular standing, as the Grand Lodge reserves the right to dispense their Charitable donations to whomsoever they please."

As written section 1 of article 1 provides that a charity fund shall be established and that upon the death of a ma-

son in good standing may donate (there is no subject of the verb donate) a sum of from one to three hundred dollars charity money to the widow, orphans, or any relative he (presumably the dead mason) may suggest and when suggestions are made they must be written upon blanks provided by the Grand Secretary for which no charge is . to be made provided relationship (to whom or what is not stated) exists by blood or ties of affection or the mother lodge.

This section of defendant's by-laws is "fearfully and wonderfully" written, but its intent, we believe, fairly clear. A charity fund for the benefit of the relatives and close friends of members is created, out of which, upon the death of the member, his beneficiary is to receive from one to three hundred dollars. The beneficiary is "suggested" by the member in good standing who must name a blood relative, or one for whom the deceased entertained a great affection or a fellow member of the mother lodge, not the lodge itself, as contended by defendant's counsel. Not the mother lodge which, according to the testimony of the Grand Master, would, in this instance, be Gilbert Lodge No. 6, because such interpretation of the section would be inconsistent with the declared purpose of the order in establishing the fund as a charity fund for relatives of a deceased member and for the further reason that a fraternal order would hardly tax its members to create a charity fund for the benefit of the order itself. We conclude, therefore, that the attempted change of the beneficiary from the wife of the deceased to the "mother lodge" was invalid because the substituted beneficiary was not included in the class of permitted "suggestions."

The second question for determination is the amount to which the plaintiff is entitled. The proceedings of the "72nd Annual Communication and Special Grand Session" of the order, held at Plaquemines, La., June 18, 19, 1935, a. copy of which is . in evidence, discloses the fact that the disbursements under this charity fund during the years 1934 and 1935 were uniformly the sum of $300 each, but at that same session a resolution was adopted reducing "the payment from the Charity Bureau to the beneficiary of a deceased Master Mason in good standing with all departments of the Grand Lodge to $200.00 for the period of twelve

months." The individual members of the various lodges, it appears, were asked to sign a paper consenting to the reduction of the charity benefits. Two witnesses testified that they saw Beasley sign such a paper, but the document itself was not introduced. This evidence was objected to upon the ground that the loss of the original document had not been sufficiently established and plaintiff complains of the failure of the court to maintain this objection. Whether the evidence should have been excluded or not is of no importance because Beasley, as a member of Gilbert Lodge No. 6, a subordinate lodge, was bound by the action of the Grand Lodge.

For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment herein in favor of Nancy Brown, widow of William Beasley, the plaintiff, and against the defendant, Most Worshipful Grand Lodge, Free and Accepted Masons of the State of Louisiana, in the sum of $200 with legal interest from judicial demand until paid and all costs.

Reversed.

JANVIER, Judge (dissenting).

I am unable to agree with the conclusion reached by my associates. There can be no question that the deceased intended to change his beneficiary so as to make Gilbert Lodge No. 6 the recipient of the proceeds of the charity fund. There is no statute which would prevent him from making that lodge his beneficiary, since Act No. 256 of 1912 has no application to "grand or subordinate lodges of Masons." See section 29 thereof. Therefore, unless the constitution, or by-laws, or rules of the lodge prevent it from becoming beneficiary, there is no reason why it could not have been named by the deceased as his beneficiary.

Article I, section 1, of the by-laws adopted at the Sixty-Eighth Annual Communication and Special Grand Session, which purports to designate those persons, natural or legal, who may be selected as beneficiary, reads as follows:

"That a Charity Fund be and the same is hereby established, and upon the death of a Master Mason, in good and regular standing, satisfactory evidence of the death submitted, may donate the sum of one dollar ($1.00) to three hundred dollars ($300.00), charity money to the widow, orphans, or any relative he may suggest, and when suggestions are made, said suggestions must be written upon blanks provided for that purpose by the Grand Secretary, for which there is no charge to be made, provided, that relationship exists by blood or ties of affection, or the mother Lodge. The purpose of said suggestions is to identify the relatives of member to the end that the Charity Bureau may be guided intelligently in the distribution of its funds."

I readily concede that that section is in some particulars ambiguous, contains grammatical and rhetorical errors, and in some respects is difficult to understand. But it seems to me that it very plainly shows an intention of the framers thereof to permit "the Mother Lodge" to be made the recipient of the charity fund, if "suggested" by the member. Therefore, the question involved is: What is meant by "the Mother Lodge?"

The record shows without contradiction that the mother lodge in this is Gilbert Lodge No. 6, which is the lodge which was "suggested" by the deceased as beneficiary. That evidence may be resorted to to show what is meant by a testator is held in Succession of Tilton, 133 La. 435, 63 So. 99.

I feel that the desire of the deceased, which was plainly and properly expressed, should be carried out unless it is contrary to statute, to rules or to by-laws of the association, or to public policy. In the instant case it is not contrary to any such rule, statute, or policy. On the other hand, it is permitted expressly, though inartistically, by the by-laws.

I respectfully dissent.